UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 13-39-DLB-HAI

VERONICA HAMPTON                                                                    PLAINTIFF

VS.                    **MEMORANDUM OPINION & ORDER**

SAFECO INSURANCE COMPANY OF AMERICA                            DEFENDANT

***************************

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. (Doc. # 36). For the reasons set forth below, the Court will grant the motion and dismiss this action.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Veronica Hampton, the Plaintiff, and her family lived at 56 O.W. Lane, London, Kentucky, in a single-family home. (Doc. # 1-1, at 2). On December 5, 2011, the home was completely destroyed by fire. (Doc. # 1-1, at 3).

Plaintiff carried home insurance with Safeco Insurance Company of America. (*Id.*). The policy included protections for fire loss–both to the dwelling itself and to Hampton's personal property. (*Id.*). The parties do not contest that Plaintiff's home had insurance coverage, but the breadth of that protection is at issue in this case. Of particular relevance is the "replacement cost" coverage provision, which provides that Safeco will pay the

1

difference between the "replacement cost" and the "actual cash value" of the home. (Doc. # 22-2, at 36).

The actual cash value of $62,500 is undisputed, and was paid on March 26, 2012. (Doc. # 36-2). Thereafter, Plaintiff notified Defendant of her intent to replace her house with a mobile home costing $66,729.12. (Doc. # 1-1, at 4). On September 28, 2012, Defendant notified Plaintiff that, under the terms of the contract, it would pay the difference between the replacement cost–$66,729.12–and the actual cash value. As Safeco wrote in a letter, "the maximum additional amount that would be owed is $3,229.12." (Doc. # 1-1, at 65).[1]

Plaintiff was unsatisfied with Defendant's position, and indicated that the amount owed under the policy was actually $45,345, which reflected the difference between $108,745–the estimated cost to replace the home that was destroyed–and the actual cash value already paid. Unable to reach an agreement, Plaintiff filed suit in state court, and Defendant removed the action to this Court.

This is the second dispositive motion filed in this case. The first presented a jurisdictional issue–specifically, whether the matter was ripe for review. After concluding that the parties' filings went to the merits of the dispute rather than a jurisdictional question, the Court denied that motion and allowed the case to proceed.

### III. ANALYSIS

#### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no

---

[1] The difference between $66,729.12 and $62, 500 is actually $4,229.12. The $3,229.12 figure includes a $1,000 policy deductible.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

The present motion presents no disputed issues of material facts. The parties agree on the relevant factual history and focus their dispute on the legal ramification of the contract. It is to those ramifications that the Court now turns.

**B.      Plaintiff misinterprets the meaning of "replacement cost"**

Before addressing Defendant's arguments that it owes no further payments under the replacement cost provision of the contract, the Court must address a preliminary issue: the meaning of "replacement cost." Under the terms of the contract, Defendant must pay the "replacement cost" when other conditions are met. (Doc. # 22-2, at 36). But that amount shall not exceed:

the smallest of the following amounts:

(a) the limit of liability under the policy applying to Coverage A or B;

(b) the replacement cost of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

(c) the full amount actually and necessarily incurred to repair *or* replace the damaged building as determined shortly following the loss;

(d) the direct financial loss you incur; or

(e) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

(Doc. # 22-2, at 36)(emphasis added).

It's clear from Plaintiff's complaint and attached filings that she views "replacement cost" as covering the full value of rebuilding her home, even if she only ever expressed a desire to purchase a mobile home. (Doc. # 1-1, at 58-59). Yet this is not what paragraph ©, quoted above, requires. It limits Defendant to paying what was "*actually* and necessarily incurred to repair or replace" Plaintiff's house–not what an appraiser estimated it would cost to rebuild the previous house, but what was *actually* incurred to replace the property. Under Kentucky law, "in the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citations omitted).

If Plaintiff had chosen to rebuild her home, then the "replacement cost" would have included the money spent to rebuild, subject to the policy's other limitations. If Plaintiff had purchased a mobile home, then the replacement cost would have covered the purchase price for that mobile home, subject to the policy's other limitations. But there is nothing in the policy language that would allow Plaintiff to purchase a relatively inexpensive mobile

4

home and then claim more than $40,000 in insurance benefits based on a speculative house that she didn't actually build. That is not how the insurance contract works, and under Kentucky law, the Court is bound by that contract's unambiguous terms.

> **C. Defendant owes no money under the policy until the insured replaces the property.**

On its face, Defendant's argument that Plaintiff cannot collect the replacement cost until she replaces the property is obviously correct. The relevant policy provision provides that Defendant "will pay the difference between *actual cash value* and *replacement cost* only when the damaged or destroyed property is repaired or replaced." (Doc. # 22-2, at 36, para. 5(a)(3)). The language could not be clearer: Defendant owes replacement costs "only when" the property is repaired or replaced. Replacing the property is thus a condition precedent, and without satisfying that condition, Plaintiff is not entitled to the replacement cost benefit. This clear interpretation has apparently been followed by every jurisdiction to address the issue. *See* 3 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 11:35 (6th ed. 2014) ("It could be that no 'replacement cost' payment is owed until the rebuilding is substantially complete"); *see also id.* at n. 7 (chronicling different jurisdictions' approaches to replacement cost provisions, all of which require actual replacement before the insurer owes any replacement cost).

Plaintiff crafts two clever theories to get around the clear language of the contract: first, that she has "made clear her intention to replace her home" and that this somehow satisfied the condition precedent; second, that Defendant committed anticipatory breach by explicitly disavowing its responsibility to pay. Each of these arguments fail.

5

The second of these arguments has no merit in light of the discussion above. The letter exchange between Plaintiff and Defendant's lawyers indicates that Defendant fully intended to pay the insurance benefits when Plaintiff replaced her property. (Doc. # 1-1, at 57-66). What Defendant did deny is that it owed more than $40,000 to rebuild a house that Plaintiff never expressed any desire to rebuild. (*Id.*) Plaintiff apparently feels that this is an anticipatory breach because she believes that Defendant owed her significantly more money under the terms of the contract. (Doc. # 40, at 10). Plaintiff is right that an "unequivocal repudiation" of the contract terms constitutes an anticipatory breach, but the only thing Defendant repudiated here is Plaintiff's meritless interpretation of the contract. Defendant did, however, promise to pay insurance benefits if Plaintiff actually replaced her dwelling as required by the contract. (*See, e.g.*, Doc. # 1-1, at 65). This is not an anticipatory breach.

Plaintiff's other argument–that her stated desire to purchase a mobile home satisfied the terms of the contract–similarly fails. While the terms of the contract clearly require actual replacement before any replacement costs are due, Plaintiff offers no case law or statutory provision that might overcome such obvious contract language. She states only that her "intent to replace was made manifest by obtaining a quote" and that, furthermore, she obtained her ex-husband's interest in the land where her house once stood. (Doc. # 40, at 6). The Court does not deny that these actions manifest some interest in rebuilding, but neither a strong interest in rebuilding nor–to use Plaintiff's preferred phrase–"a clear intent" satisfy the terms of the contract. Those terms are clear: they required that Plaintiff actually replace the property. And in this case, there is no doubt that she failed to do so.

Plaintiff devotes much of her brief to refuting the case law Defendant relies upon.

(Doc. # 40, 7-9). But in the present matter, when the terms of the contract speak so clearly, the onus is on Plaintiff to uncover some legal authority that would justify such a radical departure from the language to which the parties agreed. Plaintiff cites none and the Court finds none, so the terms of the contract will stand as written.

Some confusion apparently stems from this Court's October 25, 2013 Memorandum Order denying Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. # 33). That order provided only that the parties' claims were ripe for review. (*Id.*). Essentially, Defendant had argued that Plaintiff's claims were so premature that they did not yet belong in federal court. In rejecting that argument, the Court explicitly refused to pass judgment on the claims of either party. (*Id.* at 2) ("Whether Defendant is right regarding these assertions....")

In her brief, Plaintiff indicates that this matter presents an "actual justiciable controversy," (Doc. # 40, at 5) and that Defendant must admit the "ripeness" of Plaintiff's claims, (Doc. # 40, at 11). Whether this action is justiciable or ripe is not at issue in the present motion. The Court has already decided that the matter is justiciable and ripe, which is why it previously refused to dismiss this action for lack of jurisdiction.

Ripeness goes to the question of whether the Court has authority to hear a dispute. Yet having decided that it does have authority, the Court has now been asked to review *the merits* of Plaintiff's claims. Having done so, the Court decides that the contract's language is clear, and that it favors Defendant's position.

The insurance contract Plaintiff signed promised only to make her whole. It did not promise that she could receive both compensation for her loss–the $62,500–plus compensation for a house that she has not built or a mobile home that she has not bought.

## VI. CONCLUSION

Accordingly, for the reasons stated above, **IT IS ORDERED** that

(1) Defendant's Motion for Summary Judgment (Doc. # 36) is **granted**; and

(2) Judgment shall be entered in favor of Defendant contemporaneously with this opinion.

This 5th day of August, 2014.



G:\DATA\Opinions\London\13-39 Hampton MOO.wpd